ATTORNEY FOR APPELLANT
David C. Kolbe
Warsaw, Indiana

ATTORNEYS FOR APPELLEES
Gregory F. Zoeller
Attorney General of Indiana

Frances H. Barrow
Deputy Attorney General
Indianapolis, Indiana



# In the
# Indiana Supreme Court

No. 20S04-1012-CV-676

J.M.,

*Appellant (Petitioner below),*

v.

M.A., et al.,

*Appellees (Respondents below).*

Appeal from the Elkhart Superior Court, No. 20D06-0904-DR-187
The Honorable Mona E. Biddlecome, Commissioner

On Petition to Transfer from the Indiana Court of Appeals, No. 20A04-0911-CV-640

**June 23, 2011**

**Shepard, Chief Justice.**

About a decade after J.M. signed a paternity affidavit, the State sought a support order on behalf of the child's mother. In the course of this proceeding, the trial court denied J.M.'s motion to set aside the paternity affidavit, holding his absence at a previous child support hearing ratified his signing of the affidavit. We reverse the trial court's decision as to paternity and remand this case to give J.M. the opportunity, as agreed to by the parties at oral argument, to challenge the paternity affidavit in the manner outlined in our Code.

**Facts and Procedural History**

J.M. and T.H. began a relationship sometime in 1998 when T.H. was already four months pregnant. J.M., then seventeen, signed an Affidavit of Paternity on the day T.H. gave birth to W.H. acknowledging he was the father. M.A. is W.H.'s guardian and receives benefits from the Elkhart County Title IV-D office.[1]

Elkhart County prosecutors filed a Petition for Entry of Support and Health Insurance Coverage on April 7, 2009, and the court set it for hearing on May 22, 2009. J.M. sent an e-mail on May 21, 2009, requesting a continuance to his girlfriend (saying he was traveling out of state and attempts to find counsel had been unsuccessful). The girlfriend recorded this message on a court "minute sheet" and tendered it on the day of the hearing. The trial court denied the continuance and conducted the hearing, concluding that J.M. had had over a month to find counsel. The court then entered a default judgment and a temporary support order and ordered J.M. to appear for a compliance hearing.

On August 11, 2009, J.M., now with counsel, filed a motion to set aside the paternity affidavit. The trial court heard this motion at the same time set for the compliance hearing, September 15, 2009. The trial court declared that J.M.'s "lack of appearance at [the support hearing] ratified the previously signed affidavit of paternity." (App. at 23.) The court stated:

> It is this Court's practice, when timely filed or requested, that DNA tests be ordered for children who sign paternity affidavits prior to the eighteenth (18th) birthdays, unless some type of ratification of that order appears–occurs. [T.H.] testifies that she was four (4) months pregnant when she and Mr. [H] commenced their meretricious relationship and that [J.M.] knew at the time of the birth of the child that he was not the biological father of [W.H.] [J.M.] effectively signed and is going to be held to the legally binding affidavit, which constitutes a "poor man's adoption" of [W.H.], period.

---

[1] Title IV-D is a term used to describe the Child Support Enforcement Program of the Social Security Act. See 42 U.S.C. §§ 651–69 (2006). Under the provisions of Title IV-D, the State sought to collect child support for W.H. from J.M. in 2009. (App. at 1, 12.)

(Tr. at 7.)

J.M. filed an appeal, in which he characterized his motion to set aside the determination of paternity as a motion for relief from judgment under Indiana Trial Rule 60(B). The Court of Appeals agreed, and held the trial court abused its discretion in denying J.M.'s motion to set aside the paternity affidavit. <u>J.M. v. M.A.</u>, 928 N.E.2d 230 (Ind. Ct. App. 2010). The court also concluded that because "a material mistake of fact existed at the time Father executed the paternity affidavit," the mother testified that J.M. was not the biological father, and the State conceded the point, it was not necessary to remand for genetic testing. <u>Id.</u> at 232, 236. Thus, the Court of Appeals directed that the paternity affidavit be set aside and vacated the trial court's order adjudicating J.M. as the legal father and the order of support. <u>Id.</u> at 239. We granted transfer. <u>J.M. v. M.A.</u>, 940 N.E.2d 832 (Ind. 2010) (table).

**Default Order on Paternity**

A paternity affidavit establishes paternity and gives rise to parental rights and responsibilities including the right to obtain child support, health insurance, and parenting time. Ind. Code § 16-37-2-2.1(h) (Supp. 2010). Indiana Code also provides very narrow circumstances for the rescission of a paternity affidavit:

> (j) A paternity affidavit that is properly executed under this section may not be rescinded more than sixty (60) days after the paternity affidavit is executed unless a court:
>
> (1) has determined that fraud, duress, or material mistake of fact existed in the execution of the paternity affidavit; and
>
> (2) at the request of a man described in subsection (i), has ordered a genetic test, and the test indicates that the man is excluded as the father of the child.

3

Ind. Code § 16-37-2-2.1(j). The statute specifically requires fraud, duress, or a material mistake at the time of execution <u>and</u> genetic testing that excludes the man as the child's biological father. The statute goes on to state:

> (*l*) The court may not set aside the paternity affidavit unless a genetic test ordered under subsection (i) or (j) excludes the person who executed the paternity affidavit as the child's biological father.

Ind. Code § 16-37-2-2.1(*l*). Subsection (i) limits the signer of a paternity affidavit to sixty (60) days from execution to file an action to order a genetic test. Thus, to rescind J.M.'s affidavit the trial court must determine under subsection (j) that fraud, duress, or a material mistake of fact existed at the time J.M. executed the affidavit <u>and</u> genetic testing must exclude him as the biological father.

J.M.'s petition alleged facts that if formally proven could establish that a material mistake of fact might have existed at the time he executed the paternity affidavit. He stated he signed the affidavit under a belief that he was doing so to enable a guardianship to be established. He further alleged he was a minor who acted without legal assistance. (App. at 15.) The trial court's ruling that J.M.'s failure to appear at the child support hearing ratified the affidavit was incorrect. When counsel for J.M. was responding to the court's question about the plain language of the affidavit that J.M. was a minor and was not highly educated, the presiding commissioner replied: "Guess he should've shown up at the hearing that was set," referring to the initial support hearing. (Tr. at 6.) It was characteristic of the commissioner's demeanor.

The Court of Appeals held that because the mother testified that J.M. was not W.H.'s biological father, and the State conceded at oral argument that J.M. was not the father, a remand for genetic testing is unnecessary. <u>J.M.</u>, 928 N.E.2d at 236. The statutes on this point are, however, explicit that in order for a court to rescind a paternity affidavit, paternity testing must exclude the man as the biological father. The parties' words or agreement amongst the parties cannot supplant the statutory requirements.

4

As a final matter, J.M. has requested that we order the case assigned to a new commissioner on remand. We see no reason to do so as J.M.'s right to file a motion for a change of judge under Trial Rule 76(C)(3) is revived upon a reversal, and the commissioner who presided is no longer serving as a judicial officer.

## Conclusion

We deem the order of default to affect only the child support proceeding and order. We reverse the denial of J.M.'s motion to set aside and remand so that J.M. may be heard on his request to rescind the paternity determination in a manner that complies with the Indiana Code.

Dickson, Sullivan, Rucker, and David, JJ., concur.